## Foy's Estate

*Graham, Yost & Meyers,* for petitioner; *Alvin Sherbine,* for respondent.

REED, P. J., October 16, 1933. — The records in this case show that on August 18, 1924, on petition, Johnstown Trust Company was appointed guardian of the estate of Lewis Foy, a minor grandchild of Alice Speicher, late of Stonycreek Township, Somerset County, Pa., deceased. On August 24, 1933, a petition was presented to this court, setting forth in paragraphs 7 and 8 the following:

"Seventh: That Johnstown Trust Company was duly appointed guardian for the said Lewis Foy on August 18, 1924, and filed its bond, and the aforesaid sum [$652.89] was paid into the hands of said guardian, who still retains the same intact without any deductions therefrom, and that the amount thereof, at the present time, is the sum of approximately $950.

"Eighth: Your petitioners further aver and set forth that it will require the sum of at least $900 to defray the expenses incident to their son's attendance at Duke University during the college year of 1933-34.

"Wherefore, your petitioners, showing that they are financially unable to defray the expenses for the purposes herein set forth, and as the parents of Lewis Foy are desirous that he receive a college education, respectfully pray the court to make an order directing Johnstown Trust Company, guardian of Lewis Foy, to pay to your petitioners the sum of $900 for the purposes mentioned in this petition."

To this prayer, the following order was made:

"Now, August 21, 1933, the foregoing petition having been presented, upon consideration thereof, The Johnstown Trust Company, guardian for Lewis Foy, is authorized and directed to pay to George Foy and Nellie Foy, parents of Lewis Foy, out of the trust estate of Lewis Foy, the sum of $900 to assist in defraying the necessary expenses incident to said ward's attendance at Duke University for the college year beginning 1933 and closing in 1934. The request of the ward to this decree first to be had in writing.

BY THE COURT:<br>
Charles C. Greer,<br>
J. C. C. P. and O. C., S. P."

Due to the banking situation in the Nation and State, this order was not complied with by the guardian, and on September 6, 1933, a petition was presented for a rule on Johnstown Trust Company to show cause why it should not comply with the order of the court made on August 21st, said rule being made returnable on Monday, September 11, 1933, at 10 a. m. An answer was filed by Johnstown Trust Company to this petition, setting forth in the first three paragraphs that it had no knowledge of the presentation of a petition on August 21st until on or about August 26, 1933, when it was informed by Lewis Foy that an order had been made directing the payment of this money; further setting forth

that no copy of the petition had been given to the respondent; and the answer further avers as follows:

"4. In answer to paragraph fourth, respondent denies that it has refused and continues to refuse to comply with the order of your honorable court made on August 21, 1933. Respondent avers that the funds representing the estate of Lewis Foy were invested in accordance with the provisions of section 41 (a) 1 of the Fiduciaries Act of 1917, P. L. 447, as amended. Its ward's estate is represented by trust certificates issued by Johnstown Trust Company in the manner provided by the act, and there is not sufficient cash in the possession of the respondent to enable it to comply with the order of the court.

"5. For further answer to the petition for rule to show cause, respondent avers that on August 18, 1924, it was duly appointed guardian of the estate of Lewis Foy, a minor. It qualified as guardian and received on October 3, 1924, $652.89 as the estate of the minor. It invested $600. Thereafter on February 1, 1928, it invested $645 in accordance with the provisions of section 41 (a) 1 of the Fiduciaries Act of 1917, P. L. 447, as amended. A trust certificate was issued by Johnstown Trust Company, certifying that the holder thereof was the owner of an undivided interest in the amount of $645 in the deposits with Johnstown Trust Company of securities in which trust funds may be invested under the provisions of this paragraph. A true and correct copy of the certificate is attached hereto and made a part hereof. The additional certificates were issued representing subsequent income and copies of these certificates are attached hereto and made a part hereof.

"6. The respondent further avers that it collected the income from the said investment and reinvested it and that there is now invested in trust certificates $895, which certificates are commonly referred to as participation certificates in a mortgage pool, and respondent has $59.46 in cash, of which amount $25.49 was deposited prior to March 4, 1933, in The United States National Bank of Johnstown, an approved depository of trust funds.

"7. Respondent avers that The United States National Bank of Johnstown is in the hands of a conservator, and said sum of $25.49 is not available by reason of the fact that deposits made prior to March 4, 1933, are restricted and are not available to the depositor.

"8. For further answer, respondent says that it advised Lewis Foy and counsel for Lewis Foy that if the orphans' court approved it was ready and willing to give to him the trust certificates, otherwise designated as participation certificates, representing the principal part of his estate, in order that he might use them for the purpose of his education. The respondent is now ready, able, and willing to give these certificates to Lewis Foy, or his counsel, or his parents, as the court may direct." It further prayed that the rule to show cause why it should not comply with the order of the court be discharged, etc.

A time was fixed for a hearing on this rule and testimony was offered on the part of the respondents, and a reference to this testimony shows that it fully sustains the averments set forth in the answer. Therefore, the question to be determined by this court is whether or not this order, under the facts adduced by the pleadings and the evidence, should be revoked. The respondent has clearly shown that, in the handling of the funds belonging to its ward, it strictly complied with the provisions of the act of assembly permitting it to invest money held in trust for its wards in the manner in which this guardian invested the money of this minor; furthermore, the evidence was to the effect that, before any of the money that was invested in the mortgages which were classified as "pool A", appraisements were made of the real estate, and that only conserva-

tive amounts were loaned on the properties. There was nothing developed at the time of the hearing that would indicate that the guardian did anything other than a careful prudent business man or corporation would have done in connection with the handling of this minor's money.

It was unfortunate, of course, that our President found it necessary to close all the banking institutions on March 4th, and that up until the time this order was made the depression has not so far lifted as to warrant the guardian to make payment on the order of the court that was made on August 21, 1933; but the conditions are such that many people not only suffer inconvenience but in many cases serious losses. There is nothing in this case at the present time that would indicate that these certificates that have been tendered to this minor will not eventually be paid in full, but we do not believe it is in keeping with the spirit of the times, or that it would be proper or equitable, for the court to enforce this order and compel the guardian to pay its ward this $900, under the facts as presented by the evidence in the case. It is not proper for a judge to make orders and decrees that will prove a hardship and greatly embarrass honest and conscionable fiduciaries; if that were to be done it would, in many cases, not only work a hardship on the fiduciary but also result in unnecessary loss to those whom it represents.

In the very recent case of Paul's Estate, 81 Pitts. 293, the same question was presented to Judge Trimble, President Judge of the Orphans' Court of Allegheny County, and at page 294 the court said:

"We are referred to many cases in the briefs relating to the duties of trustees concerning their investments of trust funds, none of which can be rigidly applied to the facts of this case. There is no testimony in this case from which it could be concluded that the trustee was in any way negligent in making the investments originally or in managing them after they were made. It is true that the Cunningham Glass company mortgage is now due and payable and the trustee has not foreclosed, and it is also true that in any normal times foreclosure proceedings would not be thought of because the property mortgaged is very valuable. It is a manufacturing site favorably located on the south side of the city of Pittsburgh but at the present time the trustee believes it would be inadvisable to enter foreclosure proceedings. The time for payment of this mortgage was extended from January 5, 1929 to January 5, 1932. After January 5, 1923, the date of the trust's investment in this mortgage, six annual payments of $5,000 each were made on account of principal to and including 1929, and another payment of $2,500 was made in 1932. One estate having an interest in this mortgage received payments in the sum of $25,000 and another received payment of $5,000 and nothing was distributed to the Paul trust. It is argued that equal distribution should have been made to all the trusts interested in this mortgage but, if this had been done, it was thereupon the trustee's duty to find another investment which in all probability would have been met by the same objections as we have to the investment in the installment mortgage fund. Looking backward, we may say that the trusts which received distribution may have 'received preferential treatment to the prejudice of the Paul trust' but looking at financial conditions as they exist today, we could not come to any such conclusion. The appraisal which the trustee had in October, 1925, shows that the land and the building had a value of $153,000, more than twice the amount of the mortgage. . . .

"We see no reason to sustain the objections to the investment in the mortgage pool which is authorized by statute—see act of April 6, 1925, P. L. 152, and also section 41 (a) 1 of the fiduciaries act of 1917, amended, and the act of

1929, P. L. 817. This court has decided that this act and the amendments are constitutional—see opinion in the matter of Roswell D. Crick, 81 P. L. J. 297, infra. The pool in the instant case was started March 1, 1913, and has been continuously increased. It is only recently that foreclosures of mortgages became necessary and the pool now consists in part of the properties mortgaged. This necessitates an additional overhead expense and has resulted in a reduction of the interest return, at least temporarily. Complaint is made that the mortgages were made to the trustee and do not show that they are held in fiduciary capacity. . . .

". . . The trustee was authorized by the legislature to create a mortgage pool and to issue participation certificates but no request was made for them. There is no limit put upon the amount of the pools. The life tenant was anxious to have the greatest return possible and the trustee was equally anxious to preserve the estate for the takers in remainder. It made its appraisements of the mortgaged properties, designated on its books that the mortgages belonged to the investment fund, and showed the amount of the participations therein, which is all that is required. It now appears that some of the mortgages had to be foreclosed, possibly more must be, and that it will take time to liquidate. This misfortune is not the fault of the trustee and no penalty for it may be imposed. Every person is hopeful for a recovery of values and opportunities for sales for all kinds of property now suffering from universal depression.

"We need look only to the act of assembly of 1933, No. 6 [P. L. 9], if it were not known otherwise, to see that economic disasters of the day have fallen upon almost every person. It there appears that it became necessary that the state protect depositors in banks and it empowered the secretary of banking to permit the withholding of payments to depositors. No person in the future can read that act without knowing that this was a very troublesome day financially. Judicial decrees for distribution can not be harsh and oppressive against trustees when they have followed the acts of assembly relating to investments. We can not and will not say that this trustee should pay in cash because every provision of the law relating to investments has been carried out by it. They were made in good faith and after sufficient examination of the properties mortgaged and without any knowldge on its part of any danger to the fund. The investments were all made prior to the beginning of the depression in October, 1929, except the sum of $750.00 which was invested in the installment investment fund at three different times, October 1, 1930, May 1, 1931, and October 1, 1931; and these were made without any negligence or knowledge that any part of this sum might be lost. Indeed, there is no knowledge by any person today that the mortgage pool will not pay out in full. But, beyond any doubt, everybody knows that it will take time to liquidate it."

We believe that the clear reasoning of Judge Trimble in the above-cited case applies with equal force to the instant case; therefore, after fully considering this application and the petition for the rule, the answer thereto, and the testimony adduced at the time of the hearing, we believe that the order of the court made August 21, 1933, was untimely and should be abrogated; we further believe that the record costs incident to these proceedings should be paid out of the estate of the minor.

### Decree

And now, October 16, 1933, after duly considering all the matters brought to the attention of the court in these proceedings, it is ordered and decreed that the order of the court made on the petition for allowance on August 21, 1933, be revoked, and that the rule granted to show cause why payments should not

be made on that order be discharged, and the record costs incident to these proceedings be paid by the guardian out of the trust funds in his hands.

From Henry W. Storey, Jr., Johnstown, Pa.